[Civ. No. 23510. Third Dist. Mar. 26, 1985.]

CONCERNED CITIZENS OF CALAVERAS COUNTY et al.,
Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF CALAVERAS COUNTY,
Defendant and Respondent.

**COUNSEL**

Alexander T. Henson for Plaintiffs and Appellants.

Jeffrey Tuttle, County Counsel, for Defendant and Respondent.

**OPINION**

**SIMS, J.**—Dissatisfied with the scope of relief granted by the trial court, plaintiffs Concerned Citizens of Calaveras County and James Cox appeal from a judgment granting a peremptory writ of mandate ordering the Calaveras County Board of Supervisors (Board) to adopt findings for its gen-

eral plan revision. Plaintiffs contend that, in addition to the aforementioned relief, the trial court should have found the land use and circulation elements of the Calaveras County General Plan legally inadequate and should have issued a writ of mandate compelling the Board to set aside the general plan and to prepare and adopt a new one in compliance with Government Code section 65302.[1] Plaintiffs also contend the trial court erred in denying their request for attorneys fees (Code Civ. Proc., § 1021.5).

 ██ We conclude the land use and circulation elements of the general plan fail to satisfy statutory requirements because they are internally inconsistent (§ 65300.5) and insufficiently correlated (§ 65302, subd. (b)). We therefore instruct the trial court to issue a writ of mandate directing the Board to adopt land use and circulation elements that meet statutory requirements.

### Factual and Procedural Background

" 'The Planning and Zoning Law (Gov. Code, tit. 7, div. 1, commencing with § 65000) require[s] . . . that the board of supervisors of each county adopt a general plan for the "physical development" of the county, pursuant to section 65300; that the plan be prepared and adopted according to standards established in section 65300.5 and 65301; and that it include each of nine "elements" enumerated and described in section 65302.' (*Camp* v. *Board of Supervisors* (1981) 123 Cal.App.3d 334, 340 [176 Cal.Rptr. 620], fn. omitted.)" (*Twain Harte Homeowners Assn.* v. *County of Tuolumne* (1982) 138 Cal.App.3d 664, 671 [188 Cal.Rptr. 233].)

On April 12, 1982, the Board adopted a new general plan for the county. Several of the elements were substantially revised from the previous plan, including the land use element (denominated "Community Development Element") and the circulation element (denominated "Public Facilities and Services Element"). The relevant contents of these elements will be detailed later.

On November 2, 1982, plaintiffs filed their petition for writ of mandate (Code Civ. Proc., § 1085) in Calaveras County Superior Court, alleging the general plan adopted by the Board was legally inadequate. Plaintiffs alleged, inter alia, that the circulation and land use elements were internally inconsistent and insufficiently correlated, as there was no plan to maintain or construct roadways or highways commensurate with the projected growth of the county; and that no areas were designated for solid and liquid waste

---

[1]All statutory references are to the Government Code unless otherwise indicated.

disposal facilities. Plaintiffs also alleged the plan omitted population density standards for three areas of the county.

On June 30, 1983, the trial court rendered its tentative decision, concluding as relevant here that (a) the circulation element was adequate; (b) the land use element's omission of population density standards rendered it legally inadequate; and (c) areas for waste disposal need not be designated in the general plan until they are identified by the county. The court entered judgment ordering that a peremptory writ of mandate issue compelling the county to adopt proper density standards but denied plaintiffs' request for attorneys fees.

Plaintiffs appeal.

DISCUSSION

I

A. *Standard of Review of the General Plan*

■ In reviewing the plan before use, we have in mind that the adoption of a general plan is a legislative act; the wisdom or merits of a plan are not proper subjects of judicial scrutiny. (*Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 118 [109 Cal.Rptr. 799, 514 P.2d 111].)

Nonetheless, before 1982, California courts had recognized that general plans were not immune from review by courts. The courts noted the Legislature had enacted statutes that imposed mandatory duties on local agencies in connection with their adoption of general plans, and, if a local agency violated such a statute, the courts acted to remedy the violation of state law. Thus, in *Camp* v. *Board of Supervisors* (1981) 123 Cal.App.3d 334 [176 Cal.Rptr. 620], the court said: "Section 65302 enumerates the nine elements which a plan 'shall include,' and describes the contents of each. The word 'shall' is to be construed as mandatory in this context. (Gov. Code, §§ 5, 14.) The County must accordingly 'have a general plan that encompasses all of the requirements of state law.' (*Save El Toro Assn.* v. *Days* (1977) 74 Cal.App.3d 64, 72 [141 Cal.Rptr. 282].) If the plan adopted for it does not reflect substantial compliance with those requirements, the Board and other responsible agencies of the County have failed in the 'performance of an act which the law specially enjoins.' [¶] 'Substantial compliance, as the phrase is used in the decisions, means *actual* compliance in respect to the substance essential to every reasonable objective of the statute,' as distinguished from 'mere technical imperfections of form.'" (*Id.*, at p. 348,

quoting *Stasher* v. *Harger-Haldeman* (1962) 58 Cal.2d 23, 29 [22 Cal.Rptr. 657, 372 P.2d 649], italics in original; see *Twain Harte Homeowners Assn.* v. *County of Tuolumne, supra,* 138 Cal.App.3d at p. 674.)

In 1982, the Legislature expressly authorized judicial review of general plans by adding article 14 (commencing with § 65750) to chapter 3 of division 1 of title 7 of the Government Code (hereafter article 14).[2] (Stats. 1982, ch. 27, § 2, pp. 47-51.) Article 14 generally sets forth procedures for bringing actions to challenge a general plan, provides for certain limitations on remedies (not here pertinent), and places certain duties on cities and counties whose plans are found not to comply substantially with law. (*Ibid.*) Immediately relevant here is section 65751: "Any action to challenge a general plan or any element thereof on the grounds that such plan or element does not substantially comply with the requirements of Article 5 (commencing with § 65300) shall be brought pursuant to section 1085 of the Code of Civil Procedure."

We draw certain conclusions from the Legislature's enactment of article 14. The first is that the Legislature unmistakably intends that general plans continue to be subject to judicial review for substantial compliance with state statutes. The second is that, by requiring actions to be brought under section 1085 of the Code of Civil Procedure (§ 65751), the Legislature intended no change in the standard of review of general plans by the courts. Thus, before 1982, it was recognized that an action to challenge adoption of a general plan was properly brought under Code of Civil Procedure section 1085. (*Bownds* v. *City of Glendale* (1980) 113 Cal.App.3d 875, 884 [170 Cal.Rptr. 342]; *Karlson* v. *City of Camarillo* (1980) 100 Cal.App.3d 789, 798 [161 Cal.Rptr. 260].) As this court recently acknowledged, the appropriate standard of review is whether the local adopting agency has acted arbitrarily, capriciously, or without evidentiary basis. (*Environmental Council* v. *Board of Supervisors* (1982) 135 Cal.App.3d 428, 439-440 [185 Cal.Rptr. 363].) Because the question of substantial compliance is one of law, this court need not give deference to the conclusion of the trial court. (*Twain Harte Homeowners Assn.* v. *County of Tuolumne, supra,* 138 Cal.App.3d at p. 674.)

### B. *Internal Inconsistency of the Circulation Element (County Roads)*

Section 65300.5 provides that "In construing the provisions of [article 5, on the scope of general plans], the Legislature intends that the general plan and elements and parts thereof comprise an integrated, inter-

---

[2]Various statutes in article 14 were amended or repealed in 1984. (Stats. 1984, ch. 1039.)

nally consistent and compatible statement of policies for the adopting agency." This statute has been uniformly construed as promulgating a judicially reviewable requirement "that the elements of the general plan comprise an integrated internally consistent and compatible statement of policies." (*Sierra Club* v. *Board of Supervisors* (1981) 126 Cal.App.3d 698, 704 [179 Cal.Rptr. 261]; see *Environmental Council* v. *Board of Supervisors, supra,* 135 Cal.App.3d at pp. 439-440; *Karlson* v. *City of Camarillo, supra,* 100 Cal.App.3d at pp. 800-804; *Save El Toro Assn.* v. *Days* (1977) 74 Cal.App.3d 64, 72 [141 Cal.Rptr. 282].)

The requirements of internal integration and consistency in section 65300.5 must be read in light of the recognized purposes of a general plan. In *Neighborhood Action Group* v. *County of Calaveras* (1984) 156 Cal.App.3d 1176 at page 1183 [203 Cal.Rptr. 401], we recently described those purposes as follows: "The general plan is atop the hierarchy of local government law regulating land use. It has been aptly analogized to 'a constitution for all future developments.' (See *O'Loane* v. *O'Rourke* (1965) 231 Cal.App.2d 774 [42 Cal.Rptr. 283].) The Legislature has endorsed this view in finding that 'decisions involving the future growth of the state, most of which are made and will continue to be made at the local level, should be guided by an effective planning process, including the local general plan, and should proceed within the framework of officially approved statewide goals and policies directed to land use, population growth and distribution, development, open space, resource preservation and utilization, air and water quality, and other related physical, social and economic development factors.' (§ 65030.1.)"

If a general plan is to fulfill its function as a "constitution" guiding "an effective planning process," a general plan must be reasonably consistent and integrated on its face. A document that, on its face, displays substantial contradictions and inconsistencies cannot serve as an effective plan because those subject to the plan cannot tell what it says should happen or not happen. When a court rules a facially inconsistent plan unlawful and requires a local agency to adopt a consistent plan, the court is not evaluating the merits of the plan; rather, the court is simply directing the local agency to state with reasonable clarity what its plan is.

The first problem with the Calaveras County General Plan is that its circulation element is internally inconsistent on its face and therefore incomprehensible.

One part of the circulation element deals with "state highways" while another part discusses "county roads."

In its discussion of "county roads," the plan refers to an analysis of projected traffic prepared by the California Department of Transportation in conjunction with the Calaveras County Public Works Department and the Planning Department. The traffic analysis projected future traffic based upon future population and land use as described in other parts of the plan. The plan states, "Based upon the County's projected population of 44,200 by the year 2000, the traffic analysis indicated that the current two-lane road system in the county today would be able to accommodate projected traffic without the widening of roads to four lanes with the possible exception of State Highway 4. Improvements, though, as previously described, would be necessary to bring some major roads in the County up to acceptable design standards."

The only "previously described" improvements to roads are those related to *state highways*. Consequently, one reading the aforementioned portion of the plan would reasonably conclude that current county roads will be able to accommodate projected traffic without significant problems. However, other portions of the circulation element describing county roads flatly contradict that conclusion. Thus, the circulation element provides as follows: "County funds for both the construction and maintenance of County roads are diminishing yearly. The cost of construction is escalating at a rate between 18 and 20 percent per year while the dollar revenue steadily decreases as the public switches to smaller, more efficient vehicles. With the exception of a one-mile portion of Parrotts Ferry Road between the village of Vallecito and Camp 9 Road, no major construction projects are proposed by the County in the foreseeable future due to the lack of highway funding. The existing road situation is aggravated by continued subdivision activity in areas served by inadequate County roads. Many of these roads remain adequate as long as the lots remain undeveloped; the problems will surface in future years as homes and businesses are constructed."

The circulation element also provides, "The lack of road funds to properly maintain existing County roads will result in more emphasis on the use of private roads for primary access to property in future developments."

The Board must choose whether, on the one hand, current county roads will be able to accommodate projected traffic during the life of the plan or whether, on the other hand, "problems will surface in future years as homes and businesses are constructed." As it now stands, the circulation element of the plan, as it discusses county roads, violates section 65300.5 because it is facially inconsistent and contradictory.

C. *Internal Inconsistency and Lack of Correlation Between the Circulation Element and the Land-use Element (State Highways)*

Section 65302 provides in pertinent part that, "The general plan shall consist of a statement of development policies and shall include a diagram or diagrams and text setting forth *objectives, principles, standards,* and *plan proposals.* The plan shall include the following elements: [¶] (a) A land use element which designates the proposed general distribution and general location and extent of the uses of the land for housing, business, industry, open space, including agriculture, natural resources, recreation, and enjoyment of scenic beauty, education, public buildings and grounds, solid and liquid waste disposal facilities, and other categories of public and private uses of land. The land use element shall include a statement of the standards of population density and building intensity recommended for the various districts and other territory covered by the plan. . . . [¶] (b) A circulation element consisting of the general location and extent of existing and proposed major thoroughfares, transportation routes, terminals, and other local public utilities and facilities, *all correlated with the land use element of the plan.*" (Italics added.)

■ In construing section 65302, " 'we begin with the fundamental rule that a court "should ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) 'An equally basic rule of statutory construction is, however, that courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them.' (*Rich* v. *State Board of Optometry* (1965) 235 Cal.App.2d 591, 604 [45 Cal.Rptr. 512]; *Moyer* v. *Workmen's Comp. Appeals Bd., supra,* 10 Cal.3d, at p. 230.) Although a court may properly rely on extrinsic aids, it should first turn to the words of the statute to determine the intent of the Legislature. (*People* v. *Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1]; *Tracy* v. *Municipal Court* (1978) 22 Cal.3d 760, 764 [150 Cal.Rptr. 785, 587 P.2d 227].)" (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].)

■ Section 65302 requires, inter alia, that the circulation element— including existing and proposed major thoroughfares and transportation routes—be "correlated" with the land use element. In common parlance, "correlate" means "to bear reciprocal or mutual relations . . . ." (Webster's Third New Internat. Dict. (1981) p. 511.) "Correlated" means "closely, systematically, or reciprocally related . . . ." (*Ibid.*) Section

65302 therefore requires that the circulation element of a general plan, including its major thoroughfares, be closely, systematically, and reciprocally related to the land use element of the plan.

In its more concrete and practical application, the correlation requirement in subdivision (b) of section 65302 is designed to insure that the circulation element will describe, discuss and set forth "standards" and "proposals" respecting any change in demands on the various roadways or transportation facilities of a county as a result of changes in uses of land contemplated by the plan. (See *Twain Harte Homeowners Assn.* v. *County of Tuolumne, supra,* 138 Cal.App.3d at p. 701; see also *Camp* v. *Board of Supervisors, supra,* 123 Cal.App.3d at p. 363.) The statutory correlation requirement is evidently designed in part to prohibit a general plan from calling for unlimited population growth in its land use element without providing, in its circulation element, "proposals" for how the transportation needs of the increased population will be met. ▮ As we shall see, the Calaveras County General Plan does precisely what the correlation requirement forbids. We turn first to the land use element.

The land use element states that, at the time the element was adopted, 66 percent of the parcels of land in Calaveras County were unimproved. A high percentage of both smaller and larger subdivision parcels were undeveloped.

The land use element further states that, although it is "difficult to project the County's population into the long-term future," the State Department of Finance has projected a population increase from 20,710 in 1980 to 30,300 in 1990—a 46 percent rate of growth for the 10-year period. The land use element allocates 258,080 acres, or 39 percent of all undeveloped land in the county, to future single-family residential use.

Because of anticipated growth, the land use element states there will be increased demand for commercial goods and services, for multiple family residential units, and for recreationally oriented commercial development. Among the goals of the land use element is to "Encourage commercial development which provides support facilities and services to recreational areas of the County." Another goal is to "Encourage industrial development to occur within the County's prime industrial corridor."

The land use element does not discuss the prospect that state highways may be inadequate to handle the traffic generated by increased growth. Nor does the land use element contain any "objective," "standard," or "pro-

posal" by which unlimited growth would be restricted in the event state highways were inadequate to handle future traffic.

At the same time that the land use element calls for substantial growth, the circulation element clearly sets forth problems associated with state highways due to projected traffic. Thus, the circulation element of the plan provides in pertinent part as follows:

"State highways in Calaveras County include one major north-south route (49), one minor north-south route (104), and three east-west routes (4, 12, 26). These highways are the primary connectors to other areas of the State. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . .

"The California Department of Transportation's (Cal-Trans) analysis indicates that the majority of the length of Highway 4 would need to be expanded eventually to four lanes to carry future traffic.

"State Route 26 throughout most of its length in the County is deficient in width, alignment and structural adequacy based on current traffic engineering standards. There are no proposed projects to upgrade this facility.

"State Routes 12 and 26 share the same roadbed from Valley Springs to Toyon. Although there are some short sections which require modification, the road is generally adequate for current and projected traffic. Shoulders need widening for safety and passing lanes are needed, especially near Toyon.

"State Route 104 is an extension of Route 26 beyond West Point and connects to State Route 88 in Amador County. It serves as the most easterly, public road connection between the two counties. The road is a narrow, winding highway, probably adequate for present needs but inadequate for any substantial growth in traffic between the two counties.

"State Route 49 between Mokelumne Hill and Angels Camp is adequate for present traffic needs although shoulder widening between San Andreas and Angels Camp should be accomplished to meet present design standards.

"Portions of Route 49 between Mokelumne River and Mokelumne Hill and between Angels Camp and the Stanislaus River Bridge need realignment to meet current standards. A section near Angels Camp needs relocation for the 'Angels Bypass' as previously discussed."

At the same time the circulation element points out the aforementioned current and expected deficiencies in state highways, the element states several times that funds are unavailable to accomplish the modifications to state highways recommended by the plan. Thus, the circulation element states, "With the exception of the 'Angels Bypass' connector (Route 4), there are no construction funds available for any major projects on these state highways." Again, "State funding is not available to permit further construction in the foreseeable future on [Route 4] or any other State Route in Calaveras County." Again, "The five-year State Transportation Improvement Plan (STIP) does not include any major road construction in Calaveras County with the exception of the aforementioned 1.5 mile project [of Route 4]."

The only "plan proposals" for addressing the patent problems of inadequate state highways, identified by the circulation element itself, are the following goals, policies and implementation measures:

"41-Goal: Encourage the improvement of existing State highways to current recognized standards of capacity and safety in conformance with the land use recommendations of the General Plan.

"41a-Policy: Support efforts by the State to improve State highways which traverse Calaveras County.

"41b-Implementation Measure: Lobby for increased State funding for roads and expenditures for State highway improvements within Calaveras County.

". . . . . . . . . . . . . . . . . . . . . .

"43a-Policy: Pursue all sources of federal and state funding for road purposes.

"43b-Implementation Measure: Lobby for federal funding to improve and construct roads impacted by travel to Federal recreation areas.

"43c-Implementation Measure: Lobby for increased State funding and the reinstatement of State minimum expenditures on State highways in each county."

In short, the circulation element proposes, as a "plan proposal" for its identified problems with the state highways, that the county should ask various higher levels of government for money for state highways. The circulation element does not suggest that the county's lobbying efforts have any

reasonable prospect for success. To his credit, the county counsel has not argued that these references to lobbying efforts supply a solution to state highway problems that satisfies the requirement in subdivision (b) of section 65302 that the circulation element be "correlated" with the land use element. Nor does the circulation element contain any proposal limiting population growth or managing increased traffic in the event that necessary state highway funding is not forthcoming.

We conclude the general plan cannot identify substantial problems that will emerge with its state highway system, further report that no known funding sources are available for improvements necessary to remedy the problems, and achieve statutorily mandated correlation with its land use element (which provides for substantial population increases) simply by stating that the county will solve its problems by asking other agencies of government for money. To sanction such a device would be to provide counties with an abracadabra by which all substance in section 65302's correlation requirement would be made to disappear. Indeed, all conflicts between the various elements of a general plan—no matter how obvious, severe or dramatic—could be made magically to disappear by inclusion in the plan of the incantation, "We will lobby for funds to solve the problems causing the conflicts." In this era of fiscal restraint by the state, we cannot believe the Legislature intended that counties could meet the correlation requirement of section 65302 simply by stating they would ask the Legislature to spend money to solve their problems.

The circulation element and the land use element of the Calaveras County plan are insufficiently correlated on their face in violation of subdivision (b) of section 65302. In addition, these two elements of the plan are internally inconsistent and contradictory in violation of section 65300.5. The adoption of these elements was arbitrary and capricious. The trial court erred in concluding to the contrary.

■ We consider the appropriate remedy. We need not invalidate the Board's adoption of the entire general plan because section 65754, a part of article 14, clearly envisions that courts may declare individual elements of the plan unlawful.[3] Since the circulation element is internally inconsistent, the Board's adoption of that element must be set aside.

---

[3]Section 65754 provides in pertinent part: "In any action brought to challenge the validity of the general plan of any city, county, or city and county, or any mandatory element thereof, if the court, in a final judgment in favor of the plaintiff or petitioner, finds that the general plan or any mandatory element of the general plan does not substantially comply with the requirements of Article 5 (commencing with Section 65300):

"(a) The city, county, or city and county shall bring its general plan or relevant mandatory element or elements thereof into compliance with the requirements of Article 5 (commencing with Section 65300) within 120 days."

Our conclusion the land use and circulation elements are insufficiently correlated and inconsistent poses a different problem. The Board may wish to establish correlation and consistency by amending the land use element, the circulation element, or both. We note the Board may amend elements of its general plan when it deems it in the public interest to do so, subject to a limitation on the number of amendments per year. (§ 65358, subds. (a), (c).) This limitation does not apply to amendments made in order to comply with court decisions. (§ 65358, subd. (d)(1).) We cannot know from the record whether the Board would be precluded in the absence of a judicial invalidation from amending its land use element should it desire to do so; in order to maximize the Board's range of choices we shall invalidate the Board's adoption of both land use and circulation elements. The Board can then choose whether to amend either element, or both, to achieve statutorily required correlation and consistency.

## II

Plaintiffs contend the land use element is inadequate because it insufficiently identifies a known solid- and liquid-waste disposal site. The land use element identifies the site as follows: "Currently, there is not a designated site for the disposal of septage (waste pumped from septic tanks). Some septage is disposed of at the Sonora and Stockton waste treatment plants *and also dumped at a ranch near Valley Springs.*" (Italics added.)

Plaintiffs first claim the "site" has been approved by the Calaveras County Department of Health, citing records evidently admitted in the trial court. These records have not been made a part of the appellate record, however, and cannot be considered in this appeal.

Plaintiffs also claim that because the site is generally known as a septage-disposal site, its location must be indicated in the general plan by means of more precise language than that quoted above, even though the county does not intend that the site be used for septage disposal. Plaintiffs are in error.

Section 65302, subdivision (a) provides that the land use element must designate the "*proposed* general distribution and general location and extent of the uses of the land for . . . solid and liquid waste disposal facilities, . . ." (Italics added.) The obvious meaning of the term "proposed," is that the general plan indicate the county's *intended* uses for the land rather than actual uses which may or may not be at odds with the county's planning policy and goals. What the land use element says, in effect, is that the waste-disposal site is a nonconforming use of the land, nothing more. The validity of the general plan is not affected.

## III

■ Plaintiffs finally challenge the trial court's denial of their request for attorneys fees. We have determined that plaintiffs should have prevailed in their challenge to the land use and circulation elements of the general plan. Even assuming the trial court properly applied the analysis of *Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311 [193 Cal.Rptr. 900, 667 P.2d 704] in its denial of attorneys fees (a matter wholly inapparent from the record), it must reevaluate its decision on remand in light of plaintiffs' success on appeal. The trial court must also award plaintiffs attorneys fees for the time spent vindicating their claims on appeal. (*Guardians of Turlock's Integrity* v. *Turlock City Council* (1983) 149 Cal.App.3d 584, 600-601 [197 Cal.Rptr. 303]; *Daniels* v. *McKinney* (1983) 146 Cal.App.3d 42, 55 [193 Cal.Rptr. 842].)

### DISPOSITION

The judgment appealed from is reversed insofar as it fails to award plaintiffs attorneys fees. The cause is remanded to the trial court to determine appropriate attorneys fees and to issue a peremptory writ of mandate directing the Board to set aside its adoption and approval of the land use and circulation elements of the general plan and to adopt legally adequate land use and circulation elements consistent with the views expressed herein. In all other respects, the judgment is affirmed.

Evans, Acting P. J., and Sparks, J., concurred.