[No. D060167. Fourth Dist., Div. One. Nov. 1, 2012.]

FRIENDS OF AVIARA, Plaintiff and Appellant, v.
CITY OF CARLSBAD, Defendant and Respondent.

**COUNSEL**

Law Offices of Everett L. DeLano III, Everett L. DeLano III and M. Dare DeLano for Plaintiff and Appellant.

Ronald R. Ball, City Attorney, Jane Mobaldi, Assistant City Attorney; and Michael M. Hogan for Defendant and Respondent.

## OPINION

**BENKE, J.**—In this land use planning case respondent City of Carlsbad (the city) was required by Government Code[1] section 65588 to revise the housing element of its general plan and in particular to adopt provisions which fulfill the city's obligation to provide low-cost housing in the region. As required by the Government Code, the city adopted a revised housing element which identified an inventory of parcels which would be suitable for low-cost housing and a number of limitations in the land use element of the general plan which the city would change in order to permit the identified parcels to be developed as low-cost housing. The trial court determined that the revised housing element could make such proposed changes in the land use element, so long as the city adopted a timeline for making the changes.

Appellant Friends of Aviara (Aviara) is a nonprofit corporation composed of residents concerned about protecting the area near the Batiquitos Lagoon, which is located in the city. Aviara argues that even with a timeline for the changes, the proposed changes create an unlawful inconsistency between the housing and land use elements of the general plan.

We affirm. The Government Code expressly contemplates that in meeting its housing obligations a municipality will need to alter existing land use regulations, including existing limitations in other elements of an adopted general plan. Like the trial court, we find that inclusion in the revision of a housing element of proposed changes to other land use regulations in a general plan was expressly contemplated by the Legislature and permitted on the condition the municipality sets forth a timeline for adoption of such proposed changes.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Housing Element Revision*

Under the compulsion of section 65588, the city's staff prepared a revision to the housing element of its general plan and the city council adopted the proposed revision on December 22, 2009. The city's revision complied in the main with the requirements of section 65583 in that it set forth the means by which the city would provide its share of the number and type of housing

---

[1] All further statutory references are to the Government Code unless otherwise specified.

units required in the San Diego region as determined by the state's Department of Housing and Community Development under related provisions of section 65584, subdivision (b).[2] At the time it adopted the revision, the city also certified a mitigated negative declaration (MND), which found that the revision would not have any substantial environmental impact.

The revision set forth a detailed assessment of housing needs and an inventory of resources and constraints relevant to those needs as required by section 65583, subdivision (a)(1). The assessment and inventory identified a number of sites which could accommodate the city's assigned share of the region's housing needs and described existing land use classifications and density limitations for those sites. Of significance here, the assessment and inventory also set forth a number of amendments to the land use element of the city's general plan, which the city determined it would need to implement in order to permit development of affordable housing on the sites it had identified. In general, the proposed amendments set forth in the revision would establish minimum densities on the identified parcels which were higher than the densities then permitted in the land use element of the general plan.

### 2. Trial Court Proceedings

Aviara filed a timely petition for a writ of mandate in which it alleged the city's adoption of the revision to the housing element of its general plan was unlawful. Aviara alleged the city's MND failed to meet the requirements of the California Environmental Quality Act (CEQA), Public Resources Code section 21000 et seq. Aviara further alleged that because the revision stated that the city would be amending existing land use limitations as they appeared in the land use element of the city's general plan, the revision created an improper inconsistency in the general plan.

The trial court granted in part and denied in part Aviara's petition. The trial court denied Aviara's CEQA claim and Aviara does not challenge that aspect of the trial court's ruling on appeal. The trial court also found the revision as adopted created an impermissible conflict between the housing element and the land use element. However, the trial court found that if the city adopted an appropriate timeline for adoption of the proposed changes, the conflict was permissible. Accordingly, the trial court granted Aviara's petition insofar as Aviara argued the revision created a conflict in the general plan and issued a writ of mandate which directed the city to adopt a timeline for the general plan changes the city proposed.

---

[2] Under section 65584, subdivision (b) the state Department of Housing and Community Development determines the numerical housing allocation of each region of the state. Regional planning bodies—in this case the San Diego Association of Governments (SANDAG)—then determine how those allocations are shared within each region.

Aviara moved for an award of attorney fees which the trial court denied. Following entry of its judgment issuing the writ, Aviara filed a timely notice of appeal.

## DISCUSSION

## I

As a preliminary matter, we first dispose of the city's contention Aviara does not have standing to challenge the trial court's judgment. The city contends that because Aviara was successful in obtaining a ruling the city improperly adopted the revision to the city's housing element, the judgment was in its favor on the only issue Aviara raises on appeal.

██ It is true that, as a general rule, a party is not aggrieved and may not appeal from a judgment or order entered in its favor. (See *Hensley v. Hensley* (1987) 190 Cal.App.3d 895, 898 [235 Cal.Rptr. 684].) However, a party which has not obtained *all* of the relief it requested in the trial court is aggrieved and may appeal. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 42, pp. 103–104; see *Knight v. McMahon* (1994) 26 Cal.App.4th 747, 752–753 [31 Cal.Rptr.2d 832] [appellant was aggrieved by judgment which was nominally in appellant's favor but did not resolve the merits of her claim], disapproved on other grounds in *America Federation of Labor v. Unemployment Ins. Appeals Bd.* (1996) 13 Cal.4th 1017, 1023 [56 Cal.Rptr.2d 109, 920 P.2d 1314].)

Both here and in the trial court Aviara has argued that, notwithstanding a timeline for adoption of changes to the general plan, the revision to the housing element created unlawful inconsistencies in the general plan and that the trial court therefore should have issued a writ requiring that the city rescind its adoption of the revision. The trial court disagreed with Aviara's contention and permitted the city to remedy the defect in its revision to the housing element by simply adopting a timeline. Because Aviara did not obtain all the relief it sought in the trial court, it was aggrieved and may challenge the trial court's ruling on appeal. (See *Knight v. McMahon, supra,* 26 Cal.App.4th at p. 753.)

In the alternative, the city argues that in unsuccessfully moving to recover its attorney fees, Aviara waived its right to appeal. Again, we find no impediment to Aviara's right to challenge the trial court's judgment. Aviara did succeed, in part, in the trial court and its effort to seek recovery for its partial victory in no sense was a concession that the judgment *in its entirety*

was favorable to it.[3] (See *Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1506 [85 Cal.Rptr.3d 268] [appellant may accept judgment which provides less than he demands and nevertheless appeal and seek larger recovery].)

## II

### A. *The Housing Element Law*

The court in *Fonseca v. City of Gilroy* (2007) 148 Cal.App.4th 1174, 1182–1183 [56 Cal.Rptr.3d 374], summarized the role a housing element plays in local planning and, in general, the requirements imposed by the Housing Element Law, section 65580 et seq.: "Declaring affordable housing 'a priority of the highest order' and one not merely a local concern but a matter of 'vital statewide importance,' the Legislature in 1980 enacted legislation to require each local government to adopt a 'housing element' as a component of its general plan. (§§ 65580, subd. (a), 65581, subd. (b), 65582, subd. (d).) According to the Housing Element Law, a public locality's general plan 'must include a housing element consisting of several mandatory components.' [Citation.]

" 'The housing element shall consist of an identification and analysis of existing and projected housing needs and a statement of goals, policies, quantified objectives, financial resources, and scheduled programs for the preservation, improvement, and development of housing. The housing element shall identify adequate sites for housing, including rental housing, factory-built housing, and mobilehomes, and shall make adequate provision for the existing and projected needs of all economic segments of the community.' (§ 65583.)

"The housing element must contain a five-year program to 'implement the policies and achieve the goals and objectives of the housing element through the administration of land use and development controls.' (§ 65583, subd. (c).) . . .

"The housing element must further include an inventory of sites suitable for residential development and an analysis of the zoning, public facilities, and services available for those sites. (§ 65583, subd. (a)(3) . . .

"Thus, the five-year program must identify a sufficient number of sites that will be made available through appropriate zoning and development

---

[3] We grant both the city's and Aviara's requests for judicial notice of documents filed in the trial court after entry of the judgment. The documents are pertinent to the city's contentions that Aviara was not aggrieved by the judgment and waived its rights to appeal. (Evid. Code, §§ 452, 459; Cal. Rules of Court, rule 8.252(a)(2).)

standards to meet the quantified objectives for housing for all income levels. And if the program does not identify sufficient sites to satisfy the need for housing for all income levels, it must in any event identify sufficient sites to be zoned for multifamily housing for low- and very-low-income residents. [Citations.]" (Fn. omitted.)

B. *Section 65583, Subdivision (c)*

Of particular concern to us in resolving Aviara's claims on appeal are portions of section 65583, subdivision (c), which require that a municipality adopt a program of actions the municipality will take to implement the policies and objectives of the housing element. Section 65583, subdivision (c) requires that a housing element contain: "A program which sets forth a schedule of actions during the planning period, *each with a timeline for implementation* . . . that the local government is undertaking or intends to undertake to implement the policies and achieve the goals and objectives of the housing element *through the administration of land use and development controls* . . . . In order to make adequate provision for the housing needs of all economic segments of the community, the program shall do all of the following:

"(1) Identify actions that will be taken to make sites available during the planning period with appropriate zoning and development standards and with services and facilities to accommodate that portion of the city's or county's share of the regional housing need for each income level that could not be accommodated on sites identified in the inventory completed pursuant to paragraph (3) of subdivision (a) without rezoning . . . . Sites shall be identified as needed to facilitate and encourage the development of a variety of types of housing for all income levels, including multifamily rental housing, factory-built housing, mobilehomes, housing for agricultural employees, supportive housing, single-room occupancy units, emergency shelters, and transitional housing. [¶] . . . [¶]

"(3) Address and, where appropriate and legally possible, remove governmental constraints to the maintenance, improvement, and development of housing, including housing for all income levels and housing for persons with disabilities. The program shall remove constraints to, and provide reasonable accommodations for housing designed for, intended for occupancy by, or with supportive services for, persons with disabilities. [¶] . . . [¶]

"(7) Include an identification of the agencies and officials responsible for the implementation of the various actions and *the means by which consistency will be achieved with other general plan elements and community goals.*" (Italics added.)

■ Section 65583, subdivision (c), and in particular subpart (7), expressly contemplates that existing land use regulations, including other general plan provisions, will, if left unchanged, prevent municipalities from meeting their allocated housing obligations. Moreover, the requirement that the housing element set forth "the means by which consistency will be achieved with other general plan elements" directly expresses the Legislature's understanding that, as is the case here, policies adopted in a housing element as a method of providing a defined number of housing units will almost inevitably create inconsistency with land use limitations set forth in other elements of a general plan. It is of course significant that this expression of the Legislature's understanding that inconsistencies will arise comes within the context of a specific provision that requires the municipality set forth a program, including a timeline, for resolving such inconsistencies.

## C. *General Plan Consistency*

■ As Aviara notes, a housing element, although subject to the particular requirements set forth in the Housing Element Law, is but a part of a municipality's general plan. "The general plan is atop the hierarchy of local government law regulating land use. It has been aptly analogized to 'a constitution for all future developments.' [Citation.] The Legislature has endorsed this view in finding that 'decisions involving the future growth of the state, most of which are made and will continue to be made at the local level, should be guided by an effective planning process, including the local general plan, and should proceed within the framework of officially approved statewide goals and policies directed to land use, population growth and distribution, development, open space, resource preservation and utilization, air and water quality, and other related physical, social and economic development factors.' (§ 65030.1.)" (*Neighborhood Action Group v. County of Calaveras* (1984) 156 Cal.App.3d 1176, 1183 [203 Cal.Rptr. 401].)

Section 65300.5 states in pertinent part: "the Legislature intends that the general plan and elements and parts thereof comprise an integrated, internally consistent and compatible statement of policies for the adopting agency." Section 65300.5 has been repeatedly construed as requiring " 'that the elements of the general plan comprise an integrated internally consistent and compatible statement of policies.' " (*Concerned Citizens of Calaveras County v. Board of Supervisors* (1985) 166 Cal.App.3d 90, 96–97 [212 Cal.Rptr. 273] (*Concerned Citizens of Calaveras*), quoting *Sierra Club v. Board of Supervisors* (1981) 126 Cal.App.3d 698, 704 [179 Cal.Rptr. 261].)

With respect to the requirement that a general plan be internally consistent, the court in *Concerned Citizens of Calaveras* concluded that "[i]f a general plan is to fulfill its function as a 'constitution' guiding 'an effective planning

process,' a general plan must be reasonably consistent and integrated on its face. A document that, on its face, displays substantial contradictions and inconsistencies cannot serve as an effective plan because those subject to the plan cannot tell what it says should happen or not happen. When a court rules a facially inconsistent plan unlawful and requires a local agency to adopt a consistent plan, the court is not evaluating the merits of the plan; rather, the court is simply directing the local agency to state with reasonable clarity what its plan is." (*Concerned Citizens of Calaveras, supra*, 166 Cal.App.3d at p. 97.)

In *Concerned Citizens of Calaveras* the court found inconsistencies and directed that the county set aside its adoption of the land use and circulation elements of its general plan and adopt legally adequate land use and circulation elements. (*Concerned Citizens of Calaveras, supra*, 166 Cal.App.3d at p. 105.)

### D. *Analysis*

Aviara contends that because the revision to the housing element contains needed, but unadopted, revisions to the land use element, the general plan is unlawfully inconsistent and will remain so notwithstanding adoption of the timeline ordered by the trial court. We disagree.

■ Faithful to the principle that a general plan must be internally consistent, the Housing Element Law requires that a municipality set forth the means by which *it will* achieve consistency with other elements of its general plan. (§ 65583, subd. (c)(7).) Although requiring that consistency be achieved, use of the future tense in the statute plainly expresses legislative recognition that inconsistencies will arise and that it may not be possible to resolve them at the time a housing element is adopted or revised. As we interpret section 65583, subdivision (c)(7), it manifests a clear legislative preference that municipalities promptly adopt housing plans which meet their numerical housing obligations even at the cost of creating temporary inconsistency in general plans. The interpretation suggested by Aviara, by which other elements of a general plan must be made consistent with the housing element immediately, would no doubt delay the adoption of revised housing elements. Such an interpretation is not consistent with the express language of the Housing Element Law or the Legislature's urgent concern that municipalities provide adequate housing for the state's citizens. Thus, as the city argues, section 65583, subdivision (c)(7) is a clear exception to the requirement of section 65300.5 that general plans be facially consistent. Rather, in the case of housing, the Legislature has permitted some inconsistency so long as the means of resolving any inconsistency is also set out.

█ The trial court acted properly in requiring that the city adopt the timeline required by section 65583, subdivision (c). The trial court was not, as Aviara argues, required to order that the city vacate its adoption of the revision and wait until the land use elements could be amended before addressing its housing obligations.

### DISPOSITION

The judgment is affirmed. The city is to recover its costs of appeal.

McConnell, P. J., and Aaron, J., concurred.