Filed 12/15/15  In re M.H. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.H., et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E062711 |
| Plaintiff and Respondent, | (Super.Ct.No. INJ017174) |
| v. | OPINION |
| S.P., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Lawrence P. Best, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Gregory P. Priamos, County Counsel, James E. Brown, Guy B. Pittman, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

Defendant and appellant S.P. (Mother) is the mother of 16-year-old R.G., 13-year-old M.H., 10-year-old C.P., and eight-year-old M.P.  On appeal, Mother challenges the juvenile court's order finding the Riverside County Department of Public Social Services (DPSS) had provided her with reasonable reunification services.  We reject this contention and affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

The family came to the attention of DPSS in 2005 based on Mother's history of abusing methamphetamine and the failure of each father to provide for his respective child.[1]  On July 19, 2005, a petition pursuant to section 300 was filed on behalf of then six-year-old R.G., three-year-old M.H., and one-month-old C.P.  At the time, Mother was residing in a residential substance abuse program and making "excellent progress."  M.H. and C.P. were residing with Mother; however, because the program only allowed two children, R.G. was living with the maternal grandmother.  On February 27, 2006, the juvenile court returned the children to Mother's care and terminated the dependency.

On May 16, 2014, DPSS received a referral alleging general neglect and physical abuse of the children.  Mother was yelling, screaming, incoherent, under the influence of alcohol and an unknown substance, and aggressive toward the children.  Mother had "grabbed, bit, and choked M.P. while under the influence," and threatened to kill M.P.  A roommate reportedly restrained Mother so that M.P. could run away.  M.P. had marks on

_____

[1] Each child has a different father.  The fathers are not parties to this appeal.

her neck, chest, and left arm. Law enforcement was notified, and Mother was taken into custody on a mental hold pursuant to section 5150. A drug screen on Mother showed that she was under the influence of methamphetamine, marijuana, and alcohol. A maternal aunt was present and agreed to take the children.

The boys, R.G. and M.H., had been residing with the maternal grandmother since the beginning of the school year. M.H. reported that he felt " 'safer' " in his grandparents' home. M.P. described how Mother had attacked and threatened to kill her. M.P. recalled that she could not breathe while Mother was choking her and that when Mother released her throat she began to cough until she obtained air. M.P. reported that Mother had bitten her arm when angry in the past and that Mother did not harm her siblings in the same manner. M.P. also stated that Mother usually became angry and physical when she drank; and that Mother would also "punch, push and say bad words" to R.G. and that was the reason why R.G. did not want to stay with Mother. C.P. had initially stated that she did not know what happened and appeared to have been coached. C.P. later admitted that Mother had hit and choked M.P. Mother denied the incident with M.P., claiming she was unsure what had occurred and why she was being held at the mental health treatment facility. Mother admitted to a history of substance abuse and drinking alcohol almost every other day.

On May 20, 2014, DPSS filed a petition pursuant to section 300, subdivisions (a) (serious physical harm), (b) (failure to protect), and (g) (no provision for support) on behalf of then 15-year-old R.G., 11-year-old M.H., eight-year-old C.P., and six-year-old M.P.

The children were unable to be placed with the maternal grandmother on an emergency basis due to her criminal history. M.H., C.P., and M.P. were placed in a foster home; R.G. refused to go with the social worker and desired to remain with his maternal grandmother.[2]

The detention hearing was held on May 21, 2014. At that time, the juvenile court granted DPSS's oral motion not to detain R.G. R.G. was not detained on the condition that he reside with the maternal grandparents.[3] The other children were formally detained and Mother was granted supervised visits once a week for one hour.

M.P. and M.H. expressed that they did not want to visit Mother. M.H. stated that he did not feel safe at his mother's home and M.P. reported that she did not feel safe with Mother because she had tried to kill her. DPSS recommended that visitation occur in a

---

[2] DPSS later assessed the maternal grandparents and found the maternal grandmother had a serious child welfare history that could not be ignored and a non-exemptible crime. Based on its investigation, DPSS denied the maternal grandmother relative placement.

[3] On April 28, 2014, R.G. was listed as a suspect in a battery charge against Mother. On May 1, 2014, R.G. was arrested on felony penal and vehicle code charges and placed on deferred entry of judgment on various terms and conditions in the custody of his maternal aunt. On May 22, 2014, R.G. was arrested for possession of a stolen vehicle and again on May 31, 2014.

4

therapeutic setting for M.P. and M.H. and that visitation between Mother and C.P. be supervised once a week for one hour. As of June 12, 2014, Mother had failed to make herself available to DPSS to make arrangements for visitation.

At the June 12, 2014 jurisdictional/dispositional hearing, the juvenile court dismissed R.G. from the petition. The court found the allegations in the petition true as amended and declared M.H., M.P., and C.P. dependents of the court. Mother was offered reunification services and ordered to participate. The court also ordered supervised visitation between Mother and C.P. a minimum of once a week; and visitation between Mother, M.H. and M.P. in a therapeutic setting with increased visitation based on the therapist's input. The court further authorized that visits in a therapeutic setting be discontinued based upon the therapist's input.

By the six-month review hearing on December 12, 2014, DPSS recommended that services be continued to Mother. Mother had been residing in an inpatient substance abuse treatment center since July 29, 2014 that offered her classes to live a healthier and drug-free life and where she was able to complete her case plan requirements. At the treatment center, Mother was participating in counseling, parenting classes, substance abuse classes (including 12 steps), safety classes relating to drug use and aftercare, anger management classes, and relationships and life skills classes.

M.H. and M.P. were offered individual therapy at Barbara Sinatra Center (Center). The social worker spoke with Dr. Adams once or twice, and subsequently Dr. Adams only consulted with another doctor at the Center, Dr. Barbara Smith, and not the social

5

worker. Dr. Smith reported that the Center did not provide visitation in a therapeutic setting because it was not considered therapy, and the Center's lawyers would not allow the doctors to write a letter to the court on the children's progress regarding the appropriateness or inappropriateness of family therapy. Dr. Adams, however, stated that M.H. was not ready to see Mother. Dr. Smith reported that M.P. was not ready to participate in family services; that M.P. was not ready to see her mother; and that the doctor was unwilling to do visits in a therapeutic setting. Dr. Smith, however, was unwilling and unable to write a letter to the court in regard to the assessment. The social worker had made "numerous attempts to explain the need for the letter, as visits were ordered by the Court to occur in a therapeutic setting."

On October 23, 2014, Dr. Smith stated that she would like Mother to have six months of sobriety before family therapy and that she was concerned therapy may do more harm than good if Mother was unable to reunify. The social worker explained to the doctor the importance of providing visitation in a therapeutic setting and that it needed to be done with the child's therapist. Dr. Smith later responded that, due to the seriousness of the case, two months of sobriety was okay for visits but not family therapy; and that family therapy was not appropriate at that time.

Due to the Center's therapists not allowing visitations in a therapeutic setting and not working with DPSS, the social worker referred M.H. and M.P. to a new therapist at Jewish Family Services (JFS). JFS would work with DPSS as to what was expected of it

6

and agreed to write updates on the children's progress and determine whether therapy was appropriate. The children's first session was on November 20, 2014.

Mother had regularly asked about the children and inquired as to when she could visit with them. However, Mother's visitations with M.H. and M.P. did not occur due to the children's therapists reporting they were not ready to see Mother. Dr. Adams reported that the therapist needed a few more weeks with M.H. because he had a flat affect. Mother had been visiting C.P.; however, C.P.'s visits stopped when Mother prepared to enter her rehabilitation treatment center in July and C.P. had expressed bullying behaviors to her siblings about visits and it caused "distention [*sic*] amongst the siblings." Mother's visits with C.P. were to resume on December 1, 2014.

On December 12, 2014, the juvenile court authorized a holiday visit for Mother and C.P. On December 22, 2014, Mother had a two-hour visit with C.P. The visit went well, and they colored and talked. Mother also brought presents for M.P. and M.H.

On December 31, 2014, the children's new therapist wrote a letter indicating M.H. had attended three sessions and M.P. and C.P. five sessions. The therapist reported that M.H. and M.P. appeared confused about wanting visits with Mother. M.P. stated that she was afraid of Mother. Both would waffle between wanting and not wanting to visit Mother. The therapist recommended for all of the children that if visits took place, they be supervised.

On January 6, 2015, Mother informed the social worker that she was discharged from her inpatient treatment center because she used her "clean urine" to help other patients in the program who used substances to "pass their drug tests."

The six-month review hearing was held on January 13, 2015. At that time, Mother's counsel argued that DPSS had not complied with the case plan and the court should find DPSS had not provided Mother with reasonable services because Mother had not had visits with M.P. and M.H. in eight months. Mother's counsel recognized that Mother could not "ask for return" of the children, but requested that the court remove the therapeutic requirement; the visits be supervised by DPSS; and that the visits start immediately. Minors' counsel submitted on Mother's request for supervised visits. She also noted the children had not been ready for visits previously and had needed "severe therapy in order to be in a position to want visits." DPSS's counsel acknowledged that the children's "initial service provider became an impediment," but that DPSS "redirected the family to another service provider" and that DPSS was sincere in its efforts and goals for reunification.

The juvenile court found that DPSS had provided Mother with reasonable services and that returning the children to Mother's care would create a substantial risk of detriment to the children. The court also found that Mother had made adequate progress in complying with her case plan and that there was a substantial probability the children would be returned to her care within six months. The court continued Mother's services

for an additional six months and ordered supervised visits to begin with all of the children. The court deleted the therapeutic setting requirement. This appeal followed.

II

DISCUSSION

Mother argues the juvenile court erred in finding DPSS had provided her with reasonable services because DPSS failed to ensure Mother visited with her children as ordered by the juvenile court. We reject this contention.

Initially, we conclude that Mother is not aggrieved by the juvenile court's finding. In *Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147 (*Melinda K.*) at pages 1152-1153, the court outlined the general principles of law governing appeals in the dependency context: " '[T]he scope of a party's right to appeal is completely a creature of statute.' [Citation.] The Legislature has complete control over the right to appeal and may restrict, alter or even abolish that right. [Citation.] To govern appeals in dependency proceedings, the Legislature has enacted Welfare and Institutions Code section 395, which provides: 'A judgment in a proceeding under Section 300 may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment . . . .' A dispositional order constitutes an appealable judgment." (Fn. omitted.)

Ordinarily, only an aggrieved party may appeal from a judgment or appealable order. (See, e.g., *Canaan Taiwanese Christian Church v. All World Mission Ministries* (2012) 211 Cal.App.4th 1115, 1123; Code Civ. Proc., § 902 ["Any party aggrieved may

9

appeal"].) "[A]s a general rule, a party is not aggrieved and may not appeal from a judgment or order entered in its favor." (*Friends of Aviara v. City of Carlsbad* (2012) 210 Cal.App.4th 1103, 1108.)

In *In re K.C.* (2011) 52 Cal.4th 231, 236, the Supreme Court explained that the requirement that a party be aggrieved by the order at issue applies fully to appeals in dependency proceedings: "[O]nly a person aggrieved by a decision may appeal. [Citations.] An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision. [Citations.] These rules apply with full force to appeals from dependency proceedings."

" 'For purposes of appellate standing in dependency cases, a parent is aggrieved by a juvenile court order that injuriously affects the parent-child relationship.' [Citation.]" (*In re T.G.* (2010) 188 Cal.App.4th 687, 692 [Fourth Dist., Div. Two] (*T.G.*).)

In *Melinda K.*, the mother appealed from an order entered after a six-month review hearing at which the court found that the department had provided her with reasonable reunification services. (*Melinda K.*, *supra*, 116 Cal.App.4th at p. 1152.) The *Melinda K.* court concluded that the mother was not aggrieved by the juvenile court's finding because the court had ordered a continuation of reunification services, and no other adverse consequences resulted from the court's finding. (*Ibid.*) The court reasoned: "When the juvenile court makes a finding that reasonable services were provided, a

10

parent or legal guardian may not be immediately impacted by that finding. Here, for example, mother was not aggrieved by the finding that reasonable reunification services were provided, given that services were continued for at least another six months and no negative consequence flowed from the reasonable services finding. We do not believe that section 395 permits a party to appeal a finding in the absence of an adverse order resulting from that finding. Accordingly, we conclude that there is no right to appeal a finding that reasonable reunification services were provided to the parent or legal guardian unless the court takes adverse action based on that finding, because, in the absence of such action, there is no appealable order resulting from that finding." (*Id*. at pp. 1153-1154.)

This case is virtually indistinguishable from *Melinda K*. The juvenile court found that DPSS had offered reasonable services to Mother and made no adverse order based upon that finding. Instead, it acknowledged that Mother had made adequate progress in complying with her case plan, ordered continuation of reunification services for an additional six months, and granted Mother's request to order visitation with all of her children without the therapeutic setting requirement. The juvenile court did not take any other adverse action based on its finding that DPSS had provided reasonable services to Mother. As in *Melinda K.*, the juvenile court in this case found that Mother was in compliance with her case plans and also found a substantial probability that her children would be returned to her physical custody by the next review hearing. (*Melinda K.*, *supra*, 116 Cal.App.4th at p. 1156.) In addition, as in *Melinda K.*, Mother does not

11

contend on appeal that the court would have ordered the children returned to her at the six-month review hearing at which the court made the reasonable services finding. (*Id.* at p. 1155.) In short, Mother was not denied anything to which she would have been entitled if the juvenile court had found that DPSS had failed to offer reasonable reunification services. Accordingly, as in *Melinda K.*, Mother is not aggrieved by the juvenile court's reasonable services finding. (See *Crook v. Contreras* (2002) 95 Cal.App.4th 1194, 1201 (italics omitted) [" 'And as to the question who is the party aggrieved, the test . . . seems to be the most clear and simple that could be conceived. Would the party have had the thing, if the erroneous judgment had not been given? If the answer be ye[s], then the person is the "party aggrieved." But his right to the thing must be the immediate, and not the remote consequence of the judgment, had it been differently given.' [Citation.]"].)

We acknowledge that the court in *T.G.*, *supra*, 188 Cal.App.4th 687 criticized the reasoning of *Melinda K.*, in part on the ground that "a finding [of reasonable services at the time of the six-month review] can put the interests of parents and children in reunification at a significant procedural disadvantage." (*T.G.*, *supra*, at p. 695.) Further, while we agree with the *T.G.* court that there is a possibility that a parent might suffer future harm "based in part on an erroneous finding of reasonable services" (*T.G.*, *supra*, at p. 695) and that such a finding may not be reviewed "by way of an appeal from a subsequent adverse order" (*id.* at p. 696), in our judgment, a parent who may suffer a potential adverse consequence in the future has not had his or her "rights or

interests . . . injuriously affected by the decision in an immediate and substantial way." (*In re K.C.*, *supra*, 52 Cal.4th at p. 236 [defining an aggrieved person].) Accordingly, we conclude that the "procedural disadvantage," theory of aggrievement outlined in *T.G.*, *supra*, at page 695 is not a sufficient basis on which to conclude that Mother in this case may appeal the juvenile court's reasonable services finding.

*T.G.* is also factually distinguishable from this case. In *T.G.*, the juvenile court found the father's progress inadequate and concluded there was no substantial probability of return. The appellate court reasoned, "Because the [juvenile] court found Father's progress inadequate and concluded there was no substantial probability of return, we cannot say that this case is analogous to *Melinda K.* Nor can we say for certain that no negative consequences flowed from the court's finding that reasonable services were provided up until the six-month review hearing." (*T.G.*, *supra*, 188 Cal.App.4th at pp. 693-694.) The *T.G.* court therefore concluded that the father could appeal from the order finding reasonable services. Here, in contrast, the juvenile court made no findings adverse to Mother when it found reasonable services had been offered.

We turn now to the possibility that we may exercise our discretion to treat Mother's appeal as a petition for a writ of mandamus. In *Melinda K.*, *supra*, 116 Cal.App.4th at page 1157 the court concluded that "a petition for writ of mandate is the appropriate method by which to challenge a finding made by a juvenile court at a review hearing which does not result in an appealable order." It reached this conclusion in order that "a parent or legal guardian will be afforded meaningful appellate review of a finding

13

which may ultimately have a significant effect on the dependency proceedings." (*Ibid.*) The court also pointed out that "sequential appeals and their accompanying delays will be avoided" (*ibid.*) by permitting the mother's appeal to proceed as a writ. The court thus found that "it is consistent with these overriding goals to address mother's claims on the merits, and we will therefore exercise our discretion to treat her appeal as a petition for writ of mandate." (*Ibid.*)

In exercising our "discretionary power to treat an unauthorized appeal as a petition for an extraordinary writ" (*In re Ricky H.* (1992) 10 Cal.App.4th 552, 563-564 [Fourth Dist., Div. Two]), we find substantial evidence shows DPSS provided Mother with reasonable services under the circumstances of this case.

Whenever a child is removed from parental custody, child protective services must provide the parents and child with family reunification services. (§ 361.5, subd. (a).) Under some circumstances, services may continue for as many as 24 months from the date the child entered foster care. (§§ 361.49 [calculation of date child entered foster care], 361.5, subd. (a)(3) [grounds to continue services for a total of 18 months], 361.5, subd. (a)(4) [ground to continue services for a total of 24 months].)

We review the dependency court's reasonable efforts/reasonable services finding for substantial evidence. (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 691 (*Kevin R.*).) Under this standard, we "must view the evidence in a light most favorable to the [department]. We must indulge in all legitimate and reasonable inferences to uphold the verdict. If there is substantial evidence supporting the judgment, our duty ends and

the judgment must not be disturbed.  [Citations.]  ' " '[W]hen two or more inferences can reasonably be deduced from the facts,' either deduction will be supported by substantial evidence, and 'a reviewing court is without power to substitute its deductions for those of the trial court.'  [Citations.]" [Citation.]'  [Citation.]"  (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.)

Both the reasonableness of DPSS's efforts to provide services and the adequacy of those services are judged according to the circumstances of each case.  (*Kevin R.*, *supra*, 191 Cal.App.4th at pp. 690-691.)  "To support a finding reasonable services were offered or provided, 'the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult . . . .'  [Citation.]"  (*Id*. at p. 691.)  " 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.'  [Citation.]"  (*Id*. at p. 692.)

Here, the record supports the juvenile court's finding that reasonable services were provided.  Although visitation did not occur between Mother and her children, M.P. and M.H., DPSS made reasonable good faith efforts to initiate visitation.  Both M.P. and M.H. were offered individual therapy at the Center, and their therapists reported that they were not ready to visit with Mother.  The social worker explained to the therapists at the Center the importance of providing visitation in a therapeutic setting; however, the

15

service provider would not comply and stated they would not accommodate supervised visits as it was not considered therapy.  When the social worker learned that the Center was not adequate to meet the requirements of the visitation order or to enable Mother to have visitation with M.P. and M.H., the social worker referred the children to another service provider, JFS, who was able to accommodate DPSS.  By the end of December 2014, M.P. had five sessions with her new therapist at JFS, and M.H. had three sessions with his new therapist.  The therapist at JFS reported that if visitation was to occur, it should be in a supervised setting.  The record indicates that the social worker made a reasonable effort to provide Mother with reasonable services.

Mother's arguments to the contrary are unavailing.  We also reject Mother's purported claim in her reply brief that the juvenile court erroneously delegated visitation to the children's therapist when it ordered visitation between Mother and M.P. and M.H. to be held in a therapeutic setting with increased visitation based on the therapist's input.  (See *In re Randalynne G.* (2002) 97 Cal.App.4th 1156, 1164 [Fourth Dist., Div. Two], superseded by statute on other grounds as stated in *In re S.B.* (2004) 32 Cal.4th 1287, 1294-1295 ["A court may not delegate its discretion to determine whether any visitation will occur, but it may delegate decisions such as the time, place and manner of visitation."].)  That visitation order was made at the dispositional hearing.  Mother never challenged that order; she has thus waived the issue.  (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1151-1152.)  In any event, the issue is moot, since the juvenile court

16

removed the requirement that visitation be in a therapeutic setting and did not order increased visitation based on a therapist's input.

III

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____<br>
P. J.

We concur:

KING_____
<br>J.

MILLER_____
<br>J.