Filed 10/17/14  Forster-Gill, Inc. v. County of Humboldt CA1/4
Received for posting 11/4/14

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| FORSTER-GILL, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF HUMBOLDT, <br><br> Defendant and Respondent. | A137822 <br><br> (Humboldt County <br> Super. Ct. No. CV110550) |

**I.**

**INTRODUCTION**

After respondent Humboldt County (the County) declined to issue a zoning clearance certificate for a proposed multifamily residential development on a parcel of real property owned by appellant Forster-Gill, Inc. (Forster-Gill), Forster-Gill filed a petition for a writ of mandate seeking to overturn the denial of the certificate.  Through other causes of action in the petition, Forster-Gill also sought to establish that the County had an obligation to rezone the parcel for multifamily residential use, and to approve Forster-Gill's planned subdivision on a larger tract that included the parcel, all without conducting any further environmental or planning review.  Forster-Gill contends this duty is mandated in order to fulfill the County's obligation under California law to assure an adequate supply of affordable housing for the County's residents.  We affirm the trial court's judgment denying Forster-Gill's petition.

1

## II.

### FACTS[1]

Forster-Gill owns a 386-acre property (the Property) in the County near the City of Eureka (the City).[2] In October 2006, Forster-Gill submitted a plan to the County under which Forster-Gill proposed to develop the Property into a mixed housing and commercial development called Ridgewood Village. We will refer to the Forster-Gill's overall development plan for the entire Property as the Ridgewood Village Project.

The Property includes a smaller, 66-acre parcel (the Parcel)[3] that is zoned R-1, that is, single family residential, a zoning classification that does not permit multifamily housing. As part of the Ridgewood Village Project, Forster-Gill proposed to develop the Parcel with a mix of multifamily and commercial uses (the Parcel Project), including four 4-unit residential buildings containing a total of 16 units of affordable housing (the 16-unit Project). The increased density and change of use entailed by the Parcel Project meant that in order to permit its construction, the County would have to amend aspects of its general plan, as well as to change the zoning of the Parcel.

While the County was considering Forster-Gill's application for approval of the Ridgewood Village Project, an organization known as Humboldt Sunshine, Inc. filed suit against the County, alleging that the County was not making sufficient efforts to promote the supply of housing intended "for very low, low-, or moderate-income households" (§ 65589.5, subd. (d)), as mandated by California state law. (See Gov. Code, § 65583,

---

[1] In accordance with well-settled principles of appellate review, we summarize the facts in the light most favorable to the prevailing party, resolving all conflicts in the evidence, and drawing all legitimate and reasonable inferences, in favor of the judgment. (*Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128, 1137-1138.)

[2] The City participated as an amicus curiae in the proceedings in the trial court, and has filed an amicus brief on appeal in support of the County.

[3] The Parcel was referred to in Forster-Gill's pleadings in the trial court as "the Property." In this opinion, we will reserve the term "the Property" for the overall 386-acre tract of land that includes the 66-acre Parcel.

subd. (c).)[4] An organization called Housing for All, along with several individual low-income residents of the County, later intervened in the suit. We will refer to this litigation as the Sunshine Litigation. Forster-Gill was not a party to the Sunshine Litigation.

During 2009, the County began revising the housing element of the County's general plan (the Housing Element) in order to bring it into conformity with state statutory requirements for the development of affordable housing. Around the same time, Forster-Gill requested that the County include the Parcel on a list of properties that the County was proposing to rezone for multifamily housing use (the rezoning candidate list). The County agreed to include the Parcel on the rezoning candidate list (sometimes referred to as Table Z-3) referenced in a section of the proposed Housing Element (the February 2009 draft Housing Element) entitled Policy H-IM17. At the time, the County contemplated that the rezoning of the Parcel would occur within the planning period, as part of the planning for the overall Ridgewood Village Project.

The February 2009 draft Housing Element was submitted to the California Department of Housing and Community Development (HCD) in February 2009, for approval as required by state law. Because the Parcel Project intended to include multifamily housing on only a portion of the Parcel, the rezoning candidate list referenced in Policy H-IM17 of the February 2009 draft Housing Element reflected only 100 units of potential affordable housing on the Parcel, rather than the 700 or more units the Parcel could have held if the entire Parcel were rezoned for multifamily housing.

The February 2009 draft Housing Element was accompanied by a programmatic environmental impact report (EIR), but contemplated that a site-specific EIR would later be prepared for each piece of property during the process of its rezoning. In the specific case of the Parcel, the February 2009 draft Housing Element indicated that the EIR for

---

[4] For simplicity, we will refer to housing intended for very low, lower, and moderate income households, as defined in Government Code section 65584, subdivision (f), as affordable housing. All further statutory references are to the Government Code unless otherwise specified.

3

the rezoning of the Parcel would have to reflect the cumulative impact of the entire Ridgewood Village Project, of which the Parcel Project was only one component.

From February 2009 through August 2010, the County's draft Housing Element went through several rounds of revisions in response to comments from HCD. The Parcel remained on the rezoning candidate list throughout this process. However, the County's April 2010 revision of the draft Housing Element noted, in the site analysis for the Parcel, that the EIR for the overall Ridgewood Village Project still had not been circulated for comment. In late August 2010, after a draft of the EIR for the Ridgewood Village Project was released, the City sent the County an extensive comment letter expressing the view that the draft EIR was significantly inadequate in numerous respects.

On September 1, 2010, HCD conditionally certified the August 2010 revision of the County's Housing Element (the August 2010 Housing Element) as being in compliance with state law. However, the conditions on the certification included a requirement that later proved to be impossible for the County to meet. Specifically, when the August 2010 Housing Element was prepared, the County's staff erroneously included a provision that the contemplated rezoning of candidate properties, including the Parcel, would be completed by January 1, 2011. This was an impracticable deadline, which the County's staff had intended to extend.

Beginning in October 2010, the County Board of Supervisors (County Board) instructed County staff to attempt to expand the rezoning candidate list in connection with the affordable housing component of the August 2010 Housing Element. While the modifications to the rezoning candidate list were in process, the County missed the January 1, 2011, deadline for the County to comply with the rezoning condition attached to HCD's approval of the August 2010 Housing Element.

By January 2011, the County staff decided it would be necessary to remove the Parcel from the rezoning candidate list. Rezoning land to a more intensive use requires either a negative declaration or an EIR. Therefore, the County staff determined that it would be impracticable, and possibly a violation of the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.), to rezone the Parcel in isolation

4

from the remaining portions of the overall Ridgewood Village Project.[5] The County was particularly concerned about this due to the negative comments the County had received from the City in August 2010 regarding the Ridgewood Village Project's draft EIR. Other parcels that had been on the original rezoning candidate list were also taken off the list between August 2009 and 2010.

In February 2011, HCD decertified the August 2010 Housing Element because of the County's failure to rezone sufficient parcels by January 1, 2011. In the wake of this action, the County continued to revise its rezoning candidate list, and on June 1, 2011, it published a draft subsequent EIR (DSEIR) for the parcels it had accepted for inclusion on the revised list.[6]

On June 28, 2011, a stipulated judgment was entered in the Sunshine Litigation. The judgment noted that the County had not completed the rezoning called for by the August 2010 Housing Element; ordered the County to bring its Housing Element into compliance with state law; and retained jurisdiction in the trial court to order remedies, including permit moratoriums, if HCD did not certify the revised version of the Housing Element by August 15, 2011.

On August 11, 2011, Forster-Gill submitted an application to the County requesting a zoning clearance certificate confirming that the applicable zoning permitted Forster-Gill to build the 16-unit Project on the Parcel. A zoning clearance certificate is a document confirming that a proposed development project is consistent with the zoning of the land on which it will be situated. Under the County's zoning regulations, a zoning clearance certificate for a project must be issued before the County will issue a building permit for the construction of the project. The County denied Forster-Gill's application, because (as Forster-Gill's president expressly acknowledged in a declaration filed with

---

[5] Forster-Gill never submitted to the County either an application for the rezoning of the Parcel alone, separate from the entire Property, or a tentative subdivision map for the Parcel alone, separate from the overall Ridgewood Village Project.

[6] On July 12, 2011, Forster-Gill sent the County a letter commenting on the DSEIR published on June 1, 2011, and in particular, expressing concern about the process by which the rezoning candidate list was revised.

the trial court) the Parcel's existing zoning, as of August 2011, did not in fact permit its use for multifamily residential development. As discussed *post*, Forster-Gill instituted the present litigation on August 23, 2011, shortly after the County denied its application for a zoning clearance certificate.

On August 30, 2011, the County Board adopted an ordinance (Ordinance No. 2460) rezoning various properties to multifamily residential use. The Parcel was not among those properties. Ordinance No. 2460 was intended to rezone sufficient properties to meet the requirements of the rezoning program contemplated by the August 2010 Housing Element. Although the County initially submitted Ordinance No. 2460 and supporting documentation to HCD, the County later withdrew that request based on HCD's informal advice that the County needed to respond to comments that HCD had received regarding the suitability of the parcels rezoned by Ordinance No. 2460, and also needed to update the status of other housing programs identified in the August 2010 Housing Element.

By the time the County Board passed Ordinance No. 2460, the August 15, 2011 deadline set by the stipulated judgment in the Sunshine Litigation had passed. Moreover, even after Ordinance No. 2460 was adopted, the County's Housing Element still was not in full compliance with state law, according to HCD. Accordingly, on October 20, 2011, the trial court in the Sunshine Litigation entered an amended order (the Sunshine Order) enforcing its earlier judgment. As a statutorily authorized remedy for the County's failure to obtain timely certification of its Housing Element from HCD, the Sunshine Order imposed a moratorium on the County's grant of development permits, with certain exceptions. The Sunshine Order is discussed in more detail *post*, in connection with Forster-Gill's claims in this litigation.

On January 30, 2012, after revising the documentation accompanying Ordinance No. 2460 in accordance with HCD's informal advice, the County resubmitted Ordinance No. 2460 to HCD for approval. In March 2012, the Board formally adopted the amendments to the County's General Plan and zoning ordinances necessary to incorporate the properties rezoned by Ordinance No. 2460 into the affordable housing

6

inventory of the County's Housing Element. By that time, the focus of the County's rezoning program had shifted from tracts of vacant land (such as the Parcel) to land that was already partially improved, and on which the owners wished to construct additional development in the form of multifamily housing.

After another round of HCD comments and County revisions to the Housing Element, HCD finally certified the County's Housing Element on December 5, 2102.[7] In so doing, HCD found that the version of the Housing Element submitted by the County in September 2012 (the September 2012 Housing Element), coupled with the rezoning effected under Ordinance No. 2460, had created adequate affordable housing sites to satisfy the requirements of California law. As already noted, the Parcel was not among the sites rezoned in connection with the County's adoption of the September 2012 Housing Element.

## III.

### PROCEEDINGS IN THE TRIAL COURT

As already noted, Forster-Gill filed its petition for writ of mandate and declaratory relief in the Humboldt County Superior Court on August 23, 2011, shortly after the County denied Forster-Gill's request for a zoning clearance certificate to build the 16-unit Project on the Parcel. The parties later stipulated to the filing of an amended petition (the Petition), which was the operative pleading at the time of trial.

The Petition pleaded five causes of action, and sought the following relief: (1) a writ of mandate directing the County to issue a zoning clearance certificate for the 16-unit Project; (2) a writ of mandate directing the County to rezone the Parcel to permit multifamily residential use; (3) a writ of mandate directing the County to rezone sufficient property for affordable housing to accommodate regional housing needs; (4) a declaratory judgment that the County is required to issue a building permit for the 16-unit Project without discretionary review and without review under CEQA; and (5) a writ of

---

[7] The trial court took judicial notice of this event, which occurred after trial, but before the court filed its statement of decision.

mandate directing the County to approve the subdivision map for the entire Ridgewood Village Project.

The trial court held a non-jury trial on the Petition over the course of four days during March and May 2012.  On January 22, 2013, the trial court filed a statement of decision denying the Petition in its entirety, and entered a judgment accordingly.  On February 4, 2013, Forster-Gill filed a timely notice of appeal.

## IV.

### DISCUSSION

### A. Standard of Review

Although neither party's briefs discuss what standard of review applies to the issues presented by this appeal, fortunately the law on this subject is well settled.  " 'In reviewing a trial court's judgment on a petition for writ of ordinary mandate, we apply the substantial evidence test to the trial court's factual findings.  However, we exercise our independent judgment on legal issues, such as the interpretation of statutory . . . provisions.' [Citations.]  Similar standards apply when we consider whether a determination is proper in an action for declaratory relief.  [Citation.]" (*City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 226, fn. omitted.)

Under the substantial evidence test, "[a]n appellate court will consider the sufficiency of the evidence to support a given finding only after a party tenders such an issue together with a fair summary of the evidence bearing on the challenged finding, particularly including evidence that arguably *supports* it." (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409-410, original italics.)  In the present case, with one arguable exception, Forster-Gill's opening brief does not include any separate heading

8

arguing that the trial court's factual findings are not supported by substantial evidence.[8] (See Cal. Rules of Court, rule 8.204(a)(1)(B) [each point in a brief must be stated under a separate heading or subheading].)  Accordingly, to the extent that Forster-Gill intended any portion of its brief to constitute an implicit challenge to the trial court's factual findings, we need not address the point.  (*Alameida v. State Personnel Bd.* (2004) 120 Cal.App.4th 46, 59 ["We may disregard arguments not properly presented under appropriate headings.  [Citations.]"].)  Rather, we must accept the trial court's factual findings as true for the purpose of this appeal.  (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887.)

To the extent the trial court's statement of decision rests on interpretations of the applicable statutes, our review is de novo.  The proper interpretation of a statute, and its application to a given set of facts, is a question of law.  (*Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1250-1251; *Krug v. Maschmeier* (2009) 172 Cal.App.4th 796, 800.)  In this regard, the present case requires us to interpret the Housing Accountability Act (Gov. Code, § 65589.5[9]), and assess its interplay with the general Housing Element Law (§§ 65580 et seq.), as well as other provisions of California land use law, including the Subdivision Map Act (§ 66410 et seq.) and CEQA.  (See generally *Fonseca v. City of Gilroy* (2007) 148 Cal.App.4th 1174 (*Fonseca*).)

## B. First Cause of Action

In the first cause of action pleaded in the Petition, Foster-Gill alleged that the County had a ministerial duty to issue a zoning clearance certificate permitting the

_____

[8] The exception is that Forster-Gill's opening brief does take issue, under a separate heading, with the trial court's finding that there was no shortfall in the County's inventory of affordable housing sites from the planning period immediately prior to the period at issue in this case.  This point is discussed *post* in connection with Forster-Gill's third cause of action.

[9] Section 65589.5 was amended in minor respects in 2010, effective January 1, 2011.  (Stats. 2010, ch. 610, § 2.)  Neither party to this appeal contends that the 2010 amendments have any bearing on the issues presented here; accordingly, our analysis refers to the statute in its present form, which is substantively unchanged from the version in effect since January 1, 2008.  (See Stats. 2007, ch. 633, § 4.)

construction of the 16-unit Project on the Parcel. In support of this position, Forster-Gill relied on a provision of the Housing Accountability Act codified as section 65589.5, subdivision (d). That subdivision provides, as relevant here, that "[a] local agency shall not disapprove a housing development project . . . for very low, low-, or moderate-income households, . . . or condition approval in a manner that renders the project infeasible for development for the use of very low, low-, or moderate-income households, . . . unless it makes [one of a specified list of] written findings, based upon substantial evidence in the record . . . ."[10]

That subdivision also contains an enumeration of findings that a local agency (such as the County) may make in order to justify its disapproval of a project, including a finding that "[t]he development project . . . is inconsistent with both the jurisdiction's zoning ordinance and general plan land use designation as specified in any element of the general plan as it existed on the date the application was deemed complete, and the jurisdiction has adopted a revised housing element in accordance with Section 65588 that is in substantial compliance with this article." (§ 65589.5, subd. (d)(5).)[11] Section 65589.5, subdivision (d)(5) goes on to provide for certain exceptions, i.e., circumstances under which disapproval of a development project may be invalid even if the disapproval is based on a zoning inconsistency finding.

The parties disagreed below as to whether the County could properly make a zoning inconsistency finding with respect to the 16-unit Project, and even if so, whether any of the statutory exceptions applied. In denying relief on Forster-Gill's first cause of

---

[10] For simplicity, we will refer to the restraints on disapproval of affordable housing development projects that are imposed by section 65589.5, subdivision (d), as the affordable housing disapproval requirements.

[11] We will refer to the type of finding required by section 65589.5, subdivision (d)(5) as a zoning inconsistency finding.

action, however, the trial court relied on a different subsection of section 65589.5, which, if applicable, renders those issues immaterial.[12]

The provision on which the trial court relied instead was subdivision (h)(5) of section 65589.5 (section 65589.5(h)(5)), which defines the term "Disapprove the development project" to "include[] any instance in which a local agency . . . [¶] . . . [*v*]*otes* on a proposed housing development project application and the application is disapproved." (Italics added.) The court noted that the County's denial of Forster-Gill's application for a zoning clearance certificate was a ministerial act. Thus, the court determined that there was no "vote" disapproving the project within the meaning of section 65589.5(h)(5). The trial court concluded that because no vote was involved, the County's action in denying Forster-Gill's application for a zoning clearance certificate did not "disapprove" of the 16-unit Project within the meaning of the Housing Accountability Act.

We agree with the trial court's rationale and conclusion on this point. A requirement that a project proposal be *voted* upon implies that approval or disapproval of the project is *discretionary* on the part of the decision maker. (See generally *Ideal Boat & Camper Storage v. County of Alameda* (2012) 208 Cal.App.4th 301, 316-317 [discussing difference between discretionary and ministerial land use decisions].) Forster-Gill argues that a development project may be disapproved by means other than a vote because section 65589.5(h)(5) provides that disapprovals "include" a vote by a local agency. In our view, however, by referring to decisions made by a vote, the Legislature made it clear the definition includes only discretionary decisions, not ministerial ones.

---

[12] In its opening brief on appeal, Forster-Gill faults the trial court's statement of decision for not addressing various issues relating to the propriety of a zoning inconsistency finding regarding the 16-unit Project. A statement of decision is not required to address controverted legal or factual issues that are rendered immaterial by the trial court's findings and conclusions on a different, dispositive issue, and its failure to do so is not grounds for reversing the judgment. (*Vukovich v. Radulovich* (1991) 235 Cal.App.3d 281, 295 (" 'if findings are made on issues that determine the case, other issues become immaterial and a failure to make additional findings does not constitute prejudicial error [Citations].' [Citation.]").)

11

The issuance or denial of a zoning clearance certificate does not require a vote. It requires only a determination whether the project described in the application is consistent with the *existing* zoning of the land on which the project is to be developed. (See *Gong v. City of Fremont* (1967) 250 Cal.App.2d 568, 572.) If the project is consistent with the zoning, the application must be granted; if not, it must be denied. Accordingly, denial of a zoning clearance certificate is a ministerial act, and does not require a vote. (*Ibid.*; see *Lazan v. County of Riverside* (2006) 140 Cal.App.4th 453, 460; see also *Court House Plaza Co. v. City of Palo Alto* (1981) 117 Cal.App.3d 871, 883.)

We agree with the trial court that because no vote or other discretionary decision was involved, the County's denial of Forster-Gill's application for a zoning clearance certificate did not constitute "disapproval of a project" within the meaning of section 65589.5. We therefore affirm the trial court's denial of relief on Forster-Gill's first cause of action.

## C. Second Cause of Action

Forster-Gill's second cause of action alleged that because the Parcel was included on the rezoning candidate list in the County's August 2010 Housing Element, the County had a "clear and present duty" to rezone it to permit multifamily housing. In declining to grant any relief based on this cause of action, the trial court reasoned that the inclusion of a parcel in a rezoning candidate list in one version of a general plan's housing element does not entitle the owner to have that parcel rezoned, because to so hold would be inconsistent with section 65585, which permits a county discretionary authority to revise the housing element of its general plan.

Forster-Gill is correct that the Housing Element Law and the Housing Accountability Act required the County, in revising its Housing Element during the period from 2009 through 2012, to create and implement a rezoning program in order to facilitate the development of the County's required supply of affordable multifamily housing. The County does not dispute this. The question presented here, however, is whether the County was obligated to rezone *the Parcel* in particular as part of that process. In its briefs on appeal on this cause of action, Forster-Gill does not cite any

12

provision of the Housing Element Law and the Housing Accountability Act that requires a county to rezone every individual parcel that it identifies as a *possible* candidate for rezoning, no matter how tentative that identification may be.[13]  Nor does Forster-Gill identify any provision in the Sunshine Litigation judgment, or in the Sunshine Order, that requires the County to rezone any *particular* parcel or parcels in order to comply with its affordable housing obligations.

Forster-Gill asserts in its opening brief on appeal that "[n]o other property acceptable to HCD can provide the acreage needed" to meet the requirement in the Sunshine Litigation judgment that the County must rezone 113.5 acres to multifamily use.  However, Forster-Gill's brief provides no citation to the record to support this factual statement, and the trial court made no such finding in its statement of decision. " 'It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations.' [Citations.]  If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived.  [Citation.]" (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.)  We therefore disregard Forster-Gill's unsupported factual assertion.  (See *Cassidy v. California Bd. of Accountancy* (2013) 220 Cal.App.4th 620, 628 [appellate courts disregard factual assertions in briefs that are not supported by record references].)

Moreover, Forster-Gill's contention is belied by the fact (of which the trial court took judicial notice) that in December 2012, HCD certified the September 2012 Housing Element as being in compliance with state law, even though the Parcel was not included in the County's affordable housing rezoning program.

---

[13]  As the County's brief on appeal points out, as early as April 2010, a revised draft of the Housing Element included a comment in its site analysis for the Parcel that the "proposed rezoning" of the Parcel would be "informed by the studies prepared for the EIR" for the overall Ridgewood Village Project, and that the EIR had not yet been "released for public review."  The same comment was repeated in the August 2010 Housing Element.

Forster-Gill's opening brief also avers that the County, in the trial testimony of its senior planner Michael Richardson, "admitted" that it had a mandatory duty to rezone all the properties included in the rezoning candidate list included in the August 2010 Housing Element, including the Parcel. Richardson's testimony was that implementation of Policy H-IM17 was mandatory, and that this would entail rezoning *some* properties. He did not testify, nor is there any other evidence, that the County committed itself to rezoning the Parcel in particular, or any other specific property.

In support of its argument that it is entitled to a writ directing the County to rezone the Parcel, Forster-Gill relies on *Friends of Aviara v. City of Carlsbad* (2012) 210 Cal.App.4th 1103 (*Friends of Aviara*). The issue in that case was whether the City of Carlsbad's newly adopted housing element was invalid because it was inconsistent in various respects with the land use element of that city's general plan. (*Id.* at p. 1106.) The housing element recognized the existence of these inconsistencies, and proposed that the city make changes in the land use element to resolve them. (*Id.* at pp. 1106-1107.) A nonprofit group sought a writ of mandate setting aside the city's adoption of the housing element on the ground that its inconsistency with the general plan rendered the housing element invalid. The trial court declined to invalidate the housing element in its entirety, and instead ordered the city to adopt an appropriate timeline for making the necessary changes to the land use element. (*Id.* at p. 1107.)

The appellate court affirmed, holding that the Housing Element Law permits a locality to adopt a housing element that is inconsistent with other aspects of its general plan, provided that it identifies the required changes to the general plan, and adopts a timeline for making those changes. (*Friends of Aviara*, *supra*, 210 Cal.App.4th at pp. 1112-1113.) There is nothing in the court's opinion supporting Forster-Gill's contention that a locality must rezone every parcel that its housing element identifies as a potential affordable housing site.

For all of the foregoing reasons, we find no support in the record or in the applicable law for Forster-Gill's contention that by including the Parcel on the rezoning candidate list, the County undertook a mandatory duty to rezone the Parcel. Accordingly,

14

we agree with the trial court that Forster-Gill is not entitled to relief on its second cause of action.

## D. Third Cause of Action

Forster-Gill's third cause of action alleged that due to shortfalls in the County's inventory of sites available and suitable for affordable housing during both the 2001-2007 and 2007-2014 planning periods, the County was obligated under section 65584.09, a provision of the Housing Element Law, to rezone sufficient additional properties to satisfy its allocated affordable housing requirements. It further alleged that Forster-Gill was entitled under section 65587 to a writ of mandate to require the County to comply with sections 65583 and 65584.09.

The trial court expressly found, based on the evidence presented at trial, that there was no shortfall from the prior (2001-2007) planning period. In addition, the court found, based on documents of which it took judicial notice after trial, that on December 5, 2012, HCD approved the County's September 2012 Housing Element, and found that it had been brought into full compliance with state law.

As already noted, Foster-Gill's brief challenges this finding. However, in so doing, Foster-Gill does not even mention, much less take into account, the strictures of the substantial evidence standard of review. In particular, Foster-Gill's opening brief fails to set forth a "fair summary" of the all the evidence on the issue, favorable and unfavorable, and does not acknowledge its obligation to show how the evidence on which the trial court relied is insufficient to support its findings. (*Huong Que, Inc. v. Luu*, *supra*, 150 Cal.App.4th at pp. 409-410.) Accordingly, Forster-Gill has waived any challenge to the trial court's factual findings on this issue, and we must accept them as true for purposes of this appeal. (*In re Marriage of Fink*, *supra*, 25 Cal.3d at p. 887 [where appellant's brief does not summarize material evidence on contested factual issues, appellate court must presume that record contains evidence to support every finding of fact by trial court].) Because the trial court rejected an essential factual premise of Forster-Gill's third cause of action, and Forster-Gill has waived its right to

15

challenge the court's findings on that point, we affirm the trial court's denial of relief as to the third cause of action.

## E. Fourth Cause of Action

Forster-Gill's purported fourth cause of action did not add any substantive factual allegations to those previously pleaded, and did not purport to allege any additional legal claim. It merely sought declaratory relief as to whether the County was obligated to issue a building permit for the Parcel Project without further CEQA review or any other discretionary permits or review. The trial court denied the requested relief based on the same legal analysis underpinning its rejection of the first cause of action.

Declaratory relief is not an independent cause of action, but a form of equitable relief. (*Batt v. City and County of San Francisco* (2007) 155 Cal.App.4th 65, 82, disapproved on another ground in *McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 626; see also *California Ins. Guarantee Assn. v. Superior Court* (1991) 231 Cal.App.3d 1617, 1623–1624 [declaratory relief statute provides form of relief to plaintiff, not second cause of action for determination of issues subject of another claim].) Because we have concluded that Forster-Gill is not entitled to any form of relief on any of the substantive causes of action in the Petition, we agree with the trial court that Forster-Gill also is not entitled to declaratory relief.

## F. Fifth Cause of Action

Forster-Gill's fifth cause of action was premised on the Sunshine Order entered in October 2011. The provision of the Sunshine Order on which Forster-Gill relied, paragraph 2.E, required the County to "approve any tentative subdivision maps that meet the criteria set forth in Government Code [section] 65755[, subdivision] (a)(6)." The fifth cause of action alleged that the tentative subdivision map for the Ridgewood Village Project met the criteria in section 65755, subdivision (a)(6) (section 65755(a)(6)), and that the County was therefore obligated under paragraph 2.E of the Sunshine Order to approve the Ridgewood Village Project subdivision map.

Section 65755 is part of a statutory scheme (§§ 65750-65763) governing actions, such as the Sunshine Litigation, that challenge a general plan on the ground that it is not

in conformity with state law. Generally speaking, section 65755 provides that when a court finds that a locality's general plan does not comply with state law, the court may, with certain exceptions, limit the locality's ability to approve developments until it corrects its general plan, and/or order the locality to approve developments meeting certain criteria.

Section 65755(a)(6), in particular, provides that the court may "[m]andate that notwithstanding the provisions of Sections 66473.5 and 66474, any tentative subdivision map for a residential housing project shall be approved if all of the following requirements are met: [¶] (A) The approval of the map will not significantly impair the ability of the city, county, or city and county to adopt and implement those elements or portions thereof of the general plan which have been held to be inadequate. [¶] (B) The map complies with all of the provisions of Division 2 (commencing with Section 66410) [i.e., the Subdivision Map Act], except those parts which would require disapproval of the project due to the inadequacy of the general plan. [¶] (C) The approval of the map will not affect the ability of the city, county, or city and county to adopt and implement an adequate housing element. [¶] (D) The map is consistent with the portions of the general plan not found inadequate and the proposed revisions, if applicable, to the part of the plan held inadequate."

Paragraph 2 of the Sunshine Order imposed the type of development moratorium contemplated by section 65755, subdivision (a), by enjoining the County from issuing development permits for the construction of any multifamily housing other than affordable housing. Also, as contemplated by section 65755(a)(6), paragraph 2.E of the Sunshine Order required the County, despite the moratorium, to approve tentative subdivision maps that complied with all of the criteria set forth in that statute. As is clear from the language of section 65755(a)(6), those criteria include compliance with the Subdivision Map Act, with the sole exception of any provisions in the Subdivision Map Act that "would require disapproval of the project due to the inadequacy of the general plan." (*Id*. at subd. (a)(6)(B).)

17

The trial court denied relief with regard to Forster-Gill's fifth cause of action on the basis of its conclusion that the Ridgewood Village Project subdivision map did not comply with the Subdivision Map Act. In particular, the court found that Forster-Gill had not produced any evidence that the tentative map had obtained environmental approval; on the contrary, the environmental impact report for the Ridgewood Village Project had drawn "significant comment," and the environmental review of the project had not been completed.

On appeal, Forster-Gill notes that the Subdivision Map Act does not, by its terms, require that certification of a project's environmental impact report under CEQA must precede approval of the project's tentative map. Forster-Gill contends that the trial court therefore erred in concluding that the outstanding issues regarding the Ridgewood Village Project's CEQA status meant the project did not comply fully with the Subdivision Map Act.

This argument misses the point of the trial court's reasoning. Under the Subdivision Map Act itself—specifically section 66474, subdivision (e)—a county *must* deny approval of a tentative map if it finds that "the design of the subdivision or the proposed improvements are likely to cause substantial environmental damage or substantially and avoidably injure fish or wildlife or their habitat." Thus, the fact that the Ridgewood Village Project's draft EIR had generated significant adverse comments, and those comments had not yet been fully addressed, justified the County in concluding that the project did *not* fully comply with the Subdivision Map Act. (See 68 Ops.Cal.Atty.Gen. 108 (1985) ["[I]f significant adverse environmental effects are identified with respect to a tentative map of a proposed subdivision which relate to the 'design' or 'improvements' thereof, a local agency *may not* approve the tentative map . . . ." (Fn. omitted, italics added.)].)

Forster-Gill appears to contend, as a policy matter, that the County's duty to provide adequate sites for affordable housing obligated the County to approve the Ridgewood Village Project's tentative subdivision map notwithstanding any environmental concerns. The Legislature has made clear that its intent is to the contrary;

18

the need for affordable housing does not trump the need to minimize and mitigate the environmental impacts of development. This is evident from subdivision (e) of section 65589.5, the Housing Accountability Act, which provides: "Nothing in this section shall be construed to relieve the local agency from complying with the Congestion Management Program . . . or the California Coastal Act . . . . Neither shall anything in this section be construed to relieve the local agency from making one or more of the findings required pursuant to Section 21081 of the Public Resources Code or otherwise complying with the California Environmental Quality Act . . . ."

The trial court also denied relief on Forster-Gill's fifth cause of action based on an alternative rationale. In order for a subdivision map to qualify for mandatory approval under section 65755(a)(6)(D), the map must be "*consistent* with the portions of the general plan *not* found inadequate" (italics added) in the pending litigation challenging the general plan. The trial court found that Forster-Gill had not produced any evidence that the County's refusal to approve the Ridgewood Village Project's subdivision map resulted from the inadequacy of the Housing Element in the County's general plan, or that the tentative map conformed to all aspects of the County's general plan *other than* the Housing Element, which was the only element found to be inadequate in the Sunshine Litigation.

Indeed, in a report to the County's Planning Commission dated June 21, 2010, the County's staff stated that the Ridgewood Village Project would require amendments to the General Plan (or to the Eureka Community Plan included within the General Plan) not only with respect to zoning issues related to the provision of affordable housing, but also with respect to commercial and mixed use zoning, as well as parkland dedication requirements and traffic issues. Thus, the record makes clear that the Ridgewood Village Project did not comply with elements of the County's General Plan *outside* the Housing Element.

For all of the reasons discussed above, we conclude that the tentative map for the Ridgewood Village Project was not in full compliance with the provisions of the Subdivision Map Act. Accordingly, we agree with the trial court that paragraph 2.E of

19

the Sunshine Order does not entitle Forster-Gill to an order requiring the County to approve the Ridgewood Village Project's subdivision map.

## V.

### DISPOSITION

The judgment is AFFIRMED. The County shall recover its costs on appeal.


_____
RUVOLO, P. J.


We concur:


_____
REARDON, J.


_____
HUMES, J.*


*  Presiding Justice of the Court of Appeal, First Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.